WELCH, Judge,
dissenting.
Ledon Hall appeals his convictions for two counts of first-degree sodomy, violations of § 13A-6-63(a)(3), Ala. Code 1975, arid one count of violating the Alabama Sex Offender Registration and Community Notification Act, § 15-20A-1 et seq., Ala. Code 1975, (“SORNA”), by establishing or maintaining a residence- or any other living accommodation with a minor, a violation of § 15-20A-ll(d), Ala. Code 1975. The circuit court sentenced Hall to life iri prison for the two counts of first-degree sodomy and to 20 years in prison for violating SORNA, the sentences to be served concurrently.
Hall was charged with sexually.abusing his nephew, J., who was seven years old at the time. At trial, during direct examination by the State, the then 11-year-old J. recanted his prior ,statements and-disavowed that any sexual, abuse had occurred. Questioning of J. ceased, and another witness was called to testify, after which J. was recalled to testify. At issue on appeal *507 is whether Hall was denied his Sixth Amendment constitutional right to a public trial, when, pursuant to the State’s motion, the trial court removed all spectators from the courtroom during J.’s testimony after he was recalled.
The majority is remanding the case to the circuit court by order for that court to “satisfy the fourth Waller [v. Georgia, 467 U.S. 39, 49, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984),] requirement by making specific findings of fact relating to the first three Waller requirements.”
“Waller places the burden upon the party seeking closure to demonstrate two things: (1) an overriding interest that is likely to be prejudiced by an open courtroom, and (2) that the closure sought is no broader than is necessary to protect that interest. See Waller, 467 U.S. at 48, 104 S.Ct. 2210. The trial court then must: (1) consider reasonable alternatives to a closure, and (2) make findings adequate to support a closure of the courtroom. See id. The holding of Waller thus requires the court and the party seeking a total closure to take affirmative steps ensuring that -closing the courtroom is the least restrictive way to protect another valuable interest, an interest so valuable that it supersedes the rights of the defendant and the public to open proceedings in matters of public record. The absence of any evidence that these affirmative steps were taken, on the face of the record, cuts in favor of the party objecting to closure of the courtroom, not in favor of those who sought the closure.”
Judd v. Haley, 250 F.3d 1308, 1317 (11th Cir.2001).
Because I can find no factual support for any of the Waller, requirements, I believe that a reversal, and not a remand, is in order. Therefore, I must respectfully dissent from the majority’s order.
“A trial court’s determination concerning the attendance of spectators in the courtroom will not be disturbed on appeal in the. absence of an abuse of discretion.” P.M.M. v. State, 762 So.2d 384, 387 (Ala.Crim.App.1999), citing Lehr v. State, 398 So.2d 791 (Ala.Crim.App.1981). Moreover, “a closure of the courtroom during some, or all of the witnegses’s testimony ... [is] proper upon a full evaluation by the trial court of the pertinent .factors and interests.” P.M.M. v. State, 762 So.2d at 388.
The following transpired regarding the closure of the courtroom:
“(BENCH CONFERENCE AS' FOLLOWS:)
“MR. BILLY'[the prosecutor]: State is going to move to recall the complaining witness [J.] I think there’s some intimidation factors from family members, obviously not the defendant but other family members. So if we could- vacate the courtroom for his testimony that—I think considering his age and his demeanor and tenderness I think that would be a good thing. We could get something accomplished with his. testimony.
“THE COURT: Any objection to that?
“MS. JACKSON [the defense]: We .object. Your. Honor. The defendant is. entitled to an open courtroom trial. He’s entitled to have his family and people present for the jury to see that he has family present. We understand he .might be having trouble, but I haven’t heard any outburst that sounds like they are trying to interfere at all.
“If they wanted to avoid, having him testify in court they could have taken a video deposition of the child within the requisite time.
“THE COURT: Well, the indictment was ordered sealed. I noticed .that, which I understand is standard protocol in this *508 case but, you know, I mean no one raised it. I am not criticizing. No one raised it to begin with. On one hand you have got—of course, I don’t know who all of these people are out here. Are they related to the defendant? They could be related to the complainant and they might not be.
“MR. BILLY: Judge, they are related to both and it makes it even more upsetting for this child to have them, you know, present and they’re looking at him, putting a lot of pressure on him. He’s entitled to the confrontation clause, confront his accuser but as far as a public trial this is, you know—it’s what started as a sealed indictment. I think justice would be meet if the people left the courtroom.
“THE COURT: Just for his testimony?
‘You’re not asking them to be excluded for the balance of the trial, are you?
“MR. BILLY: No, sir, just for his testimony.
“MR. CREWS [the defense]: Judge, if I may interject?
“State had ample time if they were really that concerned about, I guess, the intimidation factor of the witness, like Ms. Jackson said, to arrange for a video deposition or to have arranged this for the first time he testified, but they didn’t do it. Now that the tables are turned we feel like they want the playing field in their favor again.
“MS. JACKSON [the defense]: My issue is that there’s been no evidence of anybody tampering. There’s been no testimony as to this. If we make these family members leave that are here supporting Ledon, it is kind of validation. That’s going to be an issue that we will have to go up against.
“I would further object on that fact that there has not been any wrongdoing.
“THE COURT: That’s a good point. I mean obviously I am not going to do it with the jury sitting over there but Ms. Jackson’s point is if they are suddenly not here—I don’t want to put words in your mouth but if they are suddenly not here for that part and then they come back but they are not here during that part it’s going to give the jury the impression that they were doing something wrong.
“MR. BILLY: They don’t know that they didn’t go get something to eat. If they are gone now and going to come right back in on the next witness and be here for the remainder of the trial I don’t think that says anything to the jury. It’s the Court’s discretion how you run the courtroom but I think that the ends of justice will be best met. The child has been through a whole lot, and I think that’s a fair thing to do.
“THE COURT: All right. I am going to grant your request. I am going to exclude them just for this limited purpose and then they can come back in after the child testifies.
“(BENCH CONFERENCE CONCLUDED)
“THE COURT: Ladies and gentlemen, at this time I am going to have to excuse you just for a moment. There’s something that we’re going to have to take up outside your presence.
“We’re going to have to take it up, and I would ask that you would retire now to the jury room.
“It shouldn’t be but just a few minutes.
“(FOLLOWING OUTSIDE THE PRESENCE OF THE JURY)
“THE COURT: All right. The Court has reached a decision now. For a limited period I am going to clear the courtroom of all except those who are actively involved in the case.
*509 “So that would be the State’s attorneys, defense attorneys and obviously the defendant. Any staff members can stay but everyone else will have to leave and we will be allowing, unless there’s further objection or motions, allowing everyone back or at least family members back in but for now all non-involved folks need to leave now,
“MS. JACKSON: I renew my objection that we discussed early for the record.
“THE COURT: So noted, Ms. Jackson, and on the record.
“You can bring the jury back in.
“(JURY BACK IN COURTROOM)”
(R. 239-244.)
Hall contends on appeal that there were insufficient grounds to support excluding the public from the courtroom during J.’s testimony.
“Article I, § 6, of the Alabama Constitution of 1901, guarantees that ‘in all criminal prosecutions, the accused has a right to ... a speedy, public trial.’ The Sixth Amendment to the United States Constitution states, in pertinent part, ‘[i]n all criminal prosecutions, the accused shall enjoy the right to a public and speedy trial.’ A trial court’s determination concerning the attendance of spectators in the courtroom will not be disturbed on appeal in the absence of an abuse of discretion. See Lehr v. State, 398 So.2d 791 (Ala.Crim.App.1981).
“In Ex parte Judd, 694 So.2d 1294 (Ala. 1997) the Alabama Supreme Court stated:
“ ‘In construing the Sixth Amendment to the United States Constitution, the United States Supreme Court has recognized a “balance of interests” to be applied in determining the extent of the right to an open trial:
“‘“[T]he Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant’s right to a fair trial or the government’s interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care.”
“ ‘Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). The Waller Court stated the test for a proper courtroom closure as follows:
“ ‘ “[1] [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.”
“ ‘467 U.S. at 48, 104 S.Ct. at 2216.’ “694 So.2d at 1295.
“The Alabama Supreme Court further stated:
“ ‘[T]he interpretation of the Supreme Court of the United States in Waller v. Georgia is not inconsistent with the provisions of Article 1, § 6, of the Alabama Constitution of 1901, and we adopt the Waller v. Georgia test for determining when a courtroom, in cases of rape or assault with intent to ravish, can be closed without violating a defendant’s constitutional right to a public trial. We hold, therefore, that a trial court has discretion under the provisions of § 12-21-202, [Ala. Code 1975,] in the proper circumstances, ... to limit access to the courtroom if there is a showing of substantial need to exclude some spectators. We would *510 caution, however, that a total closure of the courtroom can be justified only in the narrowest of circumstances, as stated in Waller, supra. In most cases, a partial closure will ordinarily allow as spectators members of the press, the defendant’s family, the victim’s family, and similar persons whose presence is necessary to protect against secret trials or to protect other interests at stake.’
“694 So.2d at 1297.”
Demouey v. State, 202 So.3d 355, 357-58 (Ala.Crim.App.2015).
Here, the State presented only the prosecutor’s personal opinion that “I think there’s some intimidation factors from family members.” (R. 239.) When the trial court cleared the courtroom, there was nothing before the court but the prosecutor’s bare assertion that J.’s prior testimony was the result of intimidation. No facts were established at all. Had the trial court made a full evaluation of the pertinent factors and interests, it could 'have determined: if there was any actual intimidation; what was said or done in the presence of J., by whom, as well as who else was present; when the alleged intimidation occurred, i.e., whether it was during the trial or before the trial began; and where the alleged intimidation occurred. Because J. had not yet resumed testifying when the courtroom "was cleared, at the time the decision to clear the courtroom was made there was no evidence before the court indicating that the witness would change his testimony if the courtroom were cleared, only the prosecutor’s opinion that: “[w]e could get something accomplished with his testimony.” (R. 240.)
The trial court completely ignored defense counsel’s objection, in which she noted that “there’s been no evidence of anybody .tampering. There’s been no testimony as to this,” and ignored defense counsel’s opinion that “there has not been any wrongdoing.” (R. 242,).
Had the trial court investigated the facts it then would have been in a position to determine if there was indeed an overriding interest that was likely to be prejudiced. It could have also been able to determine if the entire courtroom should be cleared or, alternatively, if excluding fewer than all spectators would have been appropriate in order to protect that interest. The trial court could have made findings, based upon a consideration of the facts that it found to exist, that adequate evidence existed that would justify the closure.
The trial court could' have held an in camera hearing to determine what, if anything, Hall’s family had said or done, and whether it would have had an effect on J.’s testimony. See P.M.M. v. State, 762 So.2d at 387 (“ ‘The court did not consider alternatives to immediate closure of the entire [proceeding]: directing the government to provide more detail about its need for closure, in camera if necessary, and closing only those parts of the [proceeding] that jeopardized the interests advanced.’ Waller v. Georgia, 467 U.S. at 48-49, 104 S.Ct. at 2216-17.”), All that was before the trial court was information that J. was not testifying to the same facts that he had stated in pretrial interviews and the prosecutor’s opinion that this was the result of intimidation by Hall’s family. While J.’s initial testimony was certainly prejudicial to the State, without the trial court’s independent determination, after an investigation of the facts, that intimidation had indeed occurred, a mere assertion that there would be a .change of testimony cannot be deemed the kind of overriding interest intended in Waller.
Therefore, I do not believe that the record, as set forth above, reflects that the *511 State presented any factual support of an overriding interest that would result in prejudice if the courtroom were not closed during J.’s testimony. Thus, it is pointless to remand this case for findings of fact because the record contains no facts that would support finding in favor of the State, i.e., closing the courtroom. See P.M.M. v. State, 762 So.2d at 387 (“ ‘As a result [of the prosecution’s general proffer], the trial court’s findings were broad and general, and did not purport to justify the closure of the entire [proceeding].’ ”).
Moreover, it appears to me that it is possible that there existed an alternative to a complete closing. In P.M.M. v. State, “the sole reason cited by the trial court for the complete closure of the courtroom was the ‘sensitive nature of [the case] and the ages of the children.’” 762 So.2d at 387. This Court cited Waller, stating that “the record does not support a finding that the trial court engaged in the careful balancing of interests as required by Waller v. Georgia; therefore, the closure appears to be broader than necessary.” P.M.M. v. State, 762 So.2d at 387-88. I believe the same is true in the instant case. Here, even if the State had established an overriding interest likely to have been prejudiced by an open courtroom, had an inquiry been made, the trial court might have determined that the removal of a single individual, and not the removal of Hall’s entire family, could have remedied J.’s alleged fear of testifying against Hall. After all, it appears that J. and Hall shared the same relatives. The record does not reflect which or how many relatives were present, but it is certainly possible that some attended the trial to support J. Thus, I am of the belief that the record does not disclose an adequate consideration of Waller’s second requirement—the closure must be no broader than necessary to protect that interest.
In sum, Waller requires that “the party seeking closure to demonstrate two things: (1) an overriding interest that is likely to be prejudiced by an open courtroom, and (2) that the closure sought is no broader than is necessary to protect that interest. See Waller, 467 U.S. at 48, 104 S.Ct. 2210.” Judd v. Haley, 250 F.3d at 1317. Here the party seeking closure, the State, demonstrated neither.
I do agree with the, majority that Waller permits a remand to the circuit court to supplement the record with specific findings of fact regarding closing a courtroom in cases where circumstances may exist allowing that course of action; this, however, is not one of those cases. Waller v. Georgia, 467 U.S. 39, 50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)(“[T]he remedy should be appropriate to the violation.”); see Smith v. State, 213 So. 3d 327, 338 n. 2 (Ala.Crim.App.2011) (“Although- an appellate court may, in some circumstances, remand a cause to the circuit court to supplement the record with specific findings in compliance with Waller, such a remand is not necessary in this case.”), A remand contemplates that the record can support findings made in favor of closing a courtroom. See Smith v. State, 213 So. 3d at 338 n. 2 (holding that a remand was the inappropriate remedy'because “the availability of alternatives to total closure of voir dire is apparent from the record”).
Based on the above, I would reverse the trial court’s judgment and remand the case ■for a new trial.